UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDRZEJ WROBEL, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | Civil Action No. 3-10CV0182-N |
| PATRIARCH PARTNERS § | |
| MANAGEMENT GROUP, LLC, AND § | |
| LYNN TILTON § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW ANDRZEJ WROBEL, Plaintiff, complaining of PATRIARCH PARTNERS MANAGEMENT GROUP, LLC, and LYNN TILTON, Defendants, and, for cause of action intends to the show unto the Court the following:

### I. Parties

1. Plaintiff Andrzej Wrobel is a resident of San Diego County, California.

2. Defendant Patriarch Partners Management Group, LLC, which might also be referred to as "Defendant PPMG" and "PPMG" in this pleading, is a foreign entity organized under the foreign laws of the foreign State of Delaware. This Defendant has appeared in this case.

3. Defendant Lynn Tilton, who might also be referred to as "Defendant Tilton" and "Tilton" in this pleading, is an individual. This Defendant can be served with process at 3575 S. Ocean Blvd., Highland Beach, Palm Beach County, Florida.

## II. Jurisdiction and Venue

4. Jurisdiction and venue are proper in Dallas County pursuant to the contract between Plaintiff and Defendant PPMG.

## III. Facts

5. Plaintiff and Defendants PPMG and Tilton signed a contract and entered an oral agreement concerning Plaintiff's employment with this Defendant on or about March 27, 2008. The documents were entitled Employment Agreement and an Equity Agreement.

6. Under the agreement, Plaintiff was employed as a managing director of several companies owned by Defendant PPMG. On or about June 16, 2008 Defendant PPMG made Plaintiff President and CEO of Rand McNally as an additional duty. Plaintiff was not given additional compensation for this new work. Before Plaintiff was required to do the work of the president and CEO of Rand McNally, Defendant PPMG paid the individual with this position a salary of $450,000 per year and a bonus of approximately $350,000.

7. In exchange for his services, Defendants PPMG and Tilton agreed, among other things, to pay Plaintiff Base Compensation of $325,000 annually, provide a bonus, and compensate with equity in the companies Plaintiff managed, and severance. The contract also stated that Plaintiff had an opportunity to earn bonuses that were within the discretion of the CEO. At the time the agreements were entered by the parties, PPMG and Tilton's statements were untrue. Plaintiff was not aware that he had no chance of ever obtaining a bonus, equity, or even a severance upon termination. Defendant's induced Wrobel to work at a substantially reduced below market base pay, with the chance of earning a bonus and equity in the companies he supervised. Tilton knew that Wrobel never had a chance to earn a bonus, equity, or even a severance.

8. Defendants PPMG and Tilton never intended to fulfill their contractual obligations and were engaged in a pattern of terminating high-level employees without cause, so that Defendants would avoid their contractual obligations to pay severance, pay bonus, and award equity. Defendants created false pretextual reasons for the termination of high level executives and avoid the breach the employment and the equity agreement. Defendants' termination of Bill Hinz, and Buck Hendrickson, Jim Rugg, Jason Colodne and Frances Petro demonstrate the termination of terminating high-level employees without cause to escape contractual obligations.

9. The contract permitted Defendant PPMG to terminate Plaintiff for cause. The contract defined cause as "(i) failure by [Plaintiff] to substantially perform his material duties…other than due to disability…; (ii) an act of fraud, embezzlement, theft, dishonesty, disloyalty, moral turpitude with respect to [Defendant PPMG], any parent, subsidiary, affiliate, or licensee or any violation of law;" (iii) the [Plaintiff]'s conviction of, indictment for (or its procedural equivalent), or entering of a guilty plea or plea of no contest with respect to, any felony or any crime involving an act of moral turpitude; (iv) material damage to assets of the [Defendant PPMG]; (v) unauthorized disclosure of confidential information or other breach of Article III of this Agreement (Article III set forth specific agreements regarding, among other things, noncompetition, nonsolicitation, and intellectual property); (vi) engagement in any competitive activity which would constitute a breach of this Agreement and/or the [Plaintiff]'s duty of loyalty; or material breach of any policy of [Defendant PPMG]." Plaintiff did not violate the contract that warranted a termination for cause.

10. The contract also permitted Defendant PPMG to terminate Plaintiff without cause. If Plaintiff was terminated without cause, he was, under §2.2(a) of the contract entitled to (i) the portion of his earned but unpaid Base Compensation payable through the termination date in accordance with the Defendant PPMG's customary payroll practice, (ii) payment for earned but unused paid time off subject to the carry over cap that was set forth in another section of the

agreement, (iii) payment in accordance Defendant PPMG's customary payroll practice of his current Base Compensation for six (6) months, and (iv) benefits under the Defendant PPMG's benefit plans. The portion of the contract that sets for the cap for paid time off states "During the Term, the [Plaintiff] shall be entitled to four (4) weeks of paid time off per year (or pro rata part thereof) in accordance with [Defendant PPMG]'s paid time off policies; provided, however, that, subject to applicable law, the [Plaintiff] may not carry over more than one week of unused paid time off into any subsequent year without the prior written consent of the CEO and additional unused paid time off shall be forfeited at the end of the calendar year."

11. On or about May 5, 2009 Defendant PPMG and Tilton terminated Plaintiff. Defendant PPMG took and has continued to take the position that its termination of Plaintiff was for cause, contending that Plaintiff stole money because when he was following company directives and internal policies that had him shuffling around expense reimbursements that were paid to him and due to him—a solution that was devised by Defendants PPMG and Tilton because it was so slow in reimbursing Plaintiff and other executives for expenses that Defendant PPMG required them to incur. Plaintiff kept accurate records regarding the shuffling and these records were open to the Defendant. Plaintiff followed the expense reimbursement process as outlined by the company.

12. In that Defendant PPMG's termination of Plaintiff was without cause, the Defendant PPMG was required to provide the performance set forth in the Employment Agreement. Defendant PPMG has not tendered this performance.

## IV. Causes of Action

### A. Breach of Contract

13. Plaintiff repeats and realleges by reference each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

14. Under the parties' contract, Defendant PPMG was required to make the performance set forth in §2.2(a) if it terminated Plaintiff without cause. This performance is set forth in paragraph this pleading. Although Defendant PPMG terminated Plaintiff without cause, it did not perform as required. Such failure to perform is a breach of the parties contract and the amount of the performance which has not been made is Plaintiff's damages.

### B. Fraud

15. Plaintiff repeats and realleges by reference each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

16. At the time the parties negotiated Wrobel's employment contract, Defendants PPMG and Tilton asked Wrobel to receive a substantially lower salary than comparable executives in his position, in return Defendants offered a high bonus and an opportunity for equity in the company he supervised. Defendants arrangement reduced the amount of salary it paid Wrobel, in return for opportunity to earn more in the form of bonus and equity.

17. Defendants PPMG and Tilton never intended to fulfill their contractual obligations and were engaged in a pattern of terminating high-level employees without cause, so that Defendants would avoid their contractual obligations to pay severance, pay bonus, and award equity. Defendants created false pretextual reasons for the termination of high level executives and avoid the breach the employment and the equity agreement

18. Plaintiff suffered damages by entering the contract based on the inducements of a bonus and equity. Plaintiff was damaged by giving up a portion of his base salary. In the

alternative, Plaintiff was damaged when he did everything necessary to acquire the bonus and equity in the performance of his job, yet the bonus and equity were withheld by PPMG and Tilton.

### C. Quantum Meruit

19. Plaintiff repeats and realleges by reference each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

20. In addition to the work which Plaintiff performed under the contract, as managing director of the companies in his platform, Plaintiff also provided services to Defendant PPMG as president and CEO of Rand McNally. Defendant PPMG directed Plaintiff to provide these services and it knew they were being provided. The services benefitted Defendant PPMG and were valuable, for example, it had compensated the previous president and CEO of Rand McNally with an annual salary of $450,000 and a bonus of approximately $350,000.

21. Defendant PPMG knew or should have known that Plaintiff expected compensation for his services as president and CEO when it accepted Plaintiff's services.

22. Plaintiff was damaged in the amount of the reasonable market value of the services that he provided to this Defendant.

### V. Attorney's Fees

23. Plaintiff repeats and realleges by reference each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

24. Plaintiff is entitled to reasonable attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code. All requirements to recover attorneys are present and all conditions precedent have been met or have occurred, to wit, his claim is based on breach of a written contract,

he is represented by an attorney, he made a demand, and more than 30 days have passed without Defendant tendering the just amount owed.

25. In the alternative, if Plaintiff prevails on his actions, he is entitled to attorney's fees. All conditions precedent to such a recovery have been met or have occurred.

### Jury Trial Requested

26. Plaintiff requests leave of Court for a trial by jury in accordance with the 7th Amendment of the United States Constitution, wherein it states "the right of trial by jury shall be preserved.

### VI. Prayer

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendant Patriarch Partners Management Group, LLC and Lynn Tilton be cited to appear and answer this lawsuit and that after a trial he have judgment against Defendants for the damages alleged herein, including, but not limited to, actual damages, prejudgment and post judgment interest, attorney's fees and court costs and all such other and further relief, whether legal or equitable, general or special, to which he shows himself justly entitled.

Respectfully submitted,

LOYA & ASSOCIATES, P.C.

/s/ *Raul Loya*

Raul Loya
Texas Bar No. 00791142
10830 N. Central Expressway, Suite 200
Dallas, Texas  75231
Telephone:  (214) 521-8766
Facsimile:  (214) 521-8820
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on May 31, 2011, this document was filed with the Clerk for the United States District Court for the Northern District of Texas, Dallas Division, using the CM/ECF filing system as ordered by the Court. The system will send a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means all others will be sent a copy through the United States postal service. The attorneys of record for the Defendant authorized to accept Notice are listed below.

Paul B. Lackey
Michael P. Aigen
Kristen A. Miller Reinsch
**LACKEY HERSHMAN, L.L.P.**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4241


Hillary Richard
MaryAnn Sung
**BRUNE & RICHARD LLP**
80 Broad Street
New York, NY 10004,


/s/ *Raul Loya*
Raul Loya